This case is before us on cross-motions for summary judgment seeking Wunderlich Act review of the decision of the Interior Board of Contract Appeals (board), 81-1 BCA ¶ 14,970 (No. IBCA-1270-6-79). The board denied plaintiffs claims that the Government improperly terminated its contract and refused to accept completed but unshipped items. We grant defendant’s motion for summary judgment.
The basic facts are undisputed. Plaintiff entered into a contract with the United States Geological Survey (usgs) on July 14, 1978, for electronic timers used in the collection of hydrologic data. The price of each unit was fixed by the contract, but the number of units was to be set by separate Government purchase orders, with a stated minimum number. Timers were to be delivered 120 days after the date of a purchase order. The contract further specified that the connectors which joined each timer to a recording device were to be those manufactured by a particular firm, Cannon.
The Geological Survey issued its first purchase order on September 25, 1978, for 1,035 timers. In October, plaintiff ordered the connectors from Cannon. On January 31, 1979, 126 days after the purchase order date, the contracting officer issued a show cause letter to plaintiff, demanding an explanation of the lateness. Plaintiff then informed usgs that it had been unsuccessful in obtaining the Cannon connectors. (They were not delivered to plaintiff until May 1979.) The contracting officer thereupon loaned plaintiff some connectors and suggested some alternative sources for them.
Plaintiff delivered 100 timers to the usgs regional office on March 9 and 13, 1979, but the field offices to which the timers were sent experienced a high degree of failure among them, usgs therefore inspected the next shipment of timers, which was delivered on March 30, 1979, and *751 discovered that 16 of the 88 tested failed to meet the contract specifications. The 16 were returned to plaintiff for corrections. Plaintiff made further delivery of over 200 timers on April 4 and May 1, 1979. This brought the total delivered to 503, with 532 units remaining due under the September purchase order.
usgs issued a second show cause letter on April 19, 1979. This letter listed the delivery and quality problems that had been encountered and required plaintiff to make a proposal for timely and conforming performance. Plaintiff responded that the Cannon connectors were still a problem and suggested a June delivery date. On May 10, 1979, the contracting officer terminated the contract for default as to the 532 remaining, undelivered timers. The reasons given were failure to deliver on time, failure to make acceptable progress, failure to perform to specification, and failure to respond to the April 19, 1979, show cause letter within the 10-day period specified therein.
Plaintiff appealed to the Interior Board of Contract Appeals. The board held, first, that the failure of the sole supplier did not constitute excusable delay, but that the Government had waived the delivery schedule by encouraging plaintiff to perform after the due date and by plaintiffs reliance thereon. Having decided that the 503 items tendered were timely, the board held, second, that the Government was within its rights to refuse delivery of the rest because there was no evidence that they would be in substantial conformance with the specifications. The board also held that the Government had no obligation under section 2-508 of the Uniform Commercial Code to allow plaintiff to cure defects in the first 503 timers. The board’s waiver holding is not seriously contested by the parties, so we only consider the validity of the termination for default.
In light of the facts and pertinent legal authority, the disputed timers may be divided for purposes of analysis into two categories: the 503 delivered to the Government before the date of termination and the 532 which remained unshipped and incomplete at that time. Plaintiffs claim with respect to the 503 delivered timers is aimed solely at showing that a default termination was inappropriate as to the 532 unshipped timers. In essence, plaintiff argues that, *752 not having given plaintiff an opportunity to cure defects in the 503 delivered timers, the Government cannot base its termination for default of the 532 undelivered timers on the defects in the 503.
Plaintiff relies upon section 2-508 of the U.C.C., which provides:
(1) Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.
(2) Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.
The U.C.C. has been applied by this court to public contracts. Everett Plywood & Door Corp. v. United States, 190 Ct. Cl. 80, 89-90, 419 F.2d 425, 430 (1969). The board, however, held that section 2-508 does not apply to the 503 timers because usgs had not rejected them; only the 532 undelivered timers were rejected. Rather, usgs accepted the 503 timers and made its own repairs. We decline to extend section 2-508 to cover the rejection, by termination of the contract for default, of different, undelivered goods. See Bonebrake v. Cox, 499 F.2d 951, 957 (8th Cir. 1974).
As section 2-508 does not apply in these circumstances, the termination for default must be judged by reference to the contract’s default clause, paragraph (a)(ii) of which permits termination for default,
[i]f the Contractor fails to perform any of the other provisions of this contract, or so fails to make progress as to endanger performance of this contract in accordance with its terms, and in either of these two circumstances does not cure such failure within a period of 10 days (or such longer period as the Contracting Officer may authorize in writing) after receipt of notice from the Contracting Officer specifying such failure.
Interpreting this provision in Radiation Technology, Inc. v. United States, 177 Ct. Cl. 227, 232-33, 366 F.2d 1003, 1005-06 (1966), and in Franklin E. Penny Co. v. United States, 207 *753 Ct. Cl. 842, 856-57, 524 F.2d 668, 676-77 (1975), the court identified several factual considerations which determine whether preemptory termination is permissible. First, the previous deliveries must not be in substantial conformity with contract specifications and the contractor must not have reasonable ground to believe that future deliveries will conform. Second, the defects must not be minor in nature nor correctable within a reasonable period of time in relation to the urgency of the Government’s need for the goods. Urgency in this context is not to be confused with timeliness for termination purposes; the Government is not precluded by its waiver of the date of performance from considering the urgency of its need in evaluating the adequacy of plaintiffs performance. Finally, the court must consider the complexity of the device and how usable it is in its nonconforming condition.
As stated, these are factual considerations and thus subject to substantial evidence review under the Wunder-lich Act. The board found that (1) the timers were not substantially conforming and that the contractor had no ground to believe that future shipments would conform; (2) the defects were not minor; (3) the timers were unusable as delivered; (4) the repairs needed were extensive; and (5) the timers were urgently needed. We have examined the record and find that these conclusions are supported by substantial evidence.
it is therefore ordered, after careful consideration of the parties’ submissions and without oral argument, that plaintiffs motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted, and the petition is dismissed.